## WORLD FIRE & MARINE INS. CO. v. WOOD FABRICATORS, Inc.

### No. 839.

United States District Court
S. D. Alabama, S. D.
Dec. 28, 1951.

Joseph S. Mead, Birmingham, Ala., Paul S. Jones, Grove Hill, Ala., for plaintiff.

Snow & Covington, Meridian, Miss., for defendant.

THOMAS, District Judge.

This is an action for a declaratory judgment brought by plaintiff requesting construction as to coverage afforded under its fire insurance policy No. 1083, issued to Hood Lumber Company, predecessor in title to the defendant. The question of coverage arose because of the destruction of certain lumber in a fire which occurred November 7, 1944. The defendant and ultimate owner

of the claim, Wood Fabricators, Inc., filed an amended counterclaim requesting damage in the amount of $5,159.13 for the lumber destroyed in the above-mentioned fire, which lumber defendant contended was covered under the policy in question.

## Findings of Fact

The court adopts the following findings of fact from the stipulations of the pre-trial proceedings:

I. The plaintiff is a corporation organized under the laws of the State of Connecticut and qualified to do business in the State of Alabama; the defendant is a corporation organized and existing under the laws of the State of Mississippi, and qualified to do business in the State of Alabama.

II. Policy No. 1083 was issued September 13, 1944, by the plaintiff to Hood Lumber Company, insuring against fire certain property, and the premium on said policy was paid to and including September 13, 1945.

III. On November 7, 1944, a fire occurred on the property of Hood Lumber Company, located on the south side of the Gilbertown-Shubuta Road, in Melvin, Alabama; and in said fire a quantity of lumber was destroyed.

IV. Subsequent to said fire, Hood Lumber Company made claim to the plaintiff under said policy of insurance, the amount of claim being $4,300.

V. On January 3, 1945, Hood Lumber Company transferred and assigned all of its assets, including the above-mentioned claim against the plaintiff, to C. E. Knowlton and A. E. Knowlton; and on January 31, 1945, said C. E. and A. E. Knowlton transferred and assigned all of the assets which they had acquired from Hood Lumber Company, including the above-mentioned claim against the plaintiff, to the defendant, Wood Fabricators, Inc.

VI. There is a justiciable controversy involved.

VII. Plaintiff makes no point of the failure to give any proof of loss as required by the policy, and no issue is predicated thereon.

VIII. Liability under the policy has been denied and no payment has been made thereon.

On the evidence offered in the trial of the cause, the court makes the following additional findings:

IX. Pertinent provisions of policy No. 1083 are as follows:

(Note: This policy is a printed form, and italics indicate portions which were filled in by typewriter.)
   "Single State Reporting Form 'A'
      "Monthly Average
"Reporting Form with Premium Adjustment at Specific Rate at Each Location
   *     *     *     *     *     *

"The provisional premium for all contributing insurance shall be 75% of the sum of the annual premiums at each location listed, computed on the stated limit of liability and the specific rate applying at each location, and the provisional premium for this policy shall be its proportion of the foregoing premium.
   *     *     *     *     *

"Attached to and forming a part of Policy No. *1083* of the *World Fire and Marine* of *Hartford, Conn.* issued at its *Butler, Alabama* Agency.

"This policy insures
               *Hood Lumber Company*
                  (Name of Assured)

   "1.   Item A   On Stock consisting principally of *Lumber* including packages for or containing the same, usual or incidental to the business of the assured;
   *     *     *     *     *     *

the property of the assured, or held in trust, or on consignment, or for which the assured may be liable in the event of loss or damage, all while contained in any building, shed or structure or within 100 feet thereof, within the limits of *Alabama.*
   *     *     *     *     *     *

   "3.   Exclusion Clause—This policy does not cover
      " 'A' * * * property in transit * * *
      " 'B' At any location where the assured had property as above de-

scribed which was not declared to this Company unless included in the first report of values as provided in the Value Reporting Clause and is then subject to the limit of liability of an acquired location as indicated in Item No. 7 of Paragraph 5.

"4. Limit of Liability—This policy being for the provisional amount of *$30,000.00,*

"5. List of Locations and Limits—

| Item Number | Location Street Address and City | Limit of Liability for all Contributing Insurance | Rate |
|---|---|---|---|
| "1. | *Yard #1, South Side of Gilbertown-* | $ 40,000.00 | 2.00 |
| 2 | *Shubuta Road, Melvin, Alabama* | $ | |
| 3 | | $ | |
| 4 | | $ | |
| 5 | | $ | |
| 6 | | $ | |
| 7 | At any other location acquired if included in the next succeeding monthly report of values as provided in the Value Reporting Clause. | $ 10,000.00 | Published |

"With respect to coverage on property at manufacturing plants including processing and finishing plants, the word 'location' as used in this form, unless otherwise specifically limited, shall mean:—The area within the entire group of structures, or outside within 100 feet thereof, on any one plant site.

"6. New Locations and/or Change in Limits of Liability at Any Location—New locations or change in limits of liability at existing locations shall be added by written endorsement hereon. When endorsements are made adding new locations or when the limit of liability at an original location is increased, an additional provisional premium shall be payable as of the effective date of the endorsement.

"The additional provisional premium shall be computed on the same percentage basis as used in determining the original provisional premium and shall be for the unexpired term of the policy on a pro rata basis at the rate applying at the location.

"7. Contributing Insurance Clause— * * *.

"8. Specific Insurance Clause— * * *.

being *100%* of the total contributing insurance, liability of this Company is limited to the same percentage of any loss and in no event to exceed the same percentage of each of the following limits, but no insurance attaches under any one or more of the following limits unless a definite amount is specified as a limit and inserted in the blank immediately opposite the location item:

"9. Excess Clause— * * *.

"10. Value Reporting Clause—It is a condition of this policy that the assured shall report to this Company not later than thirty (30) days after the last day of each month, the exact location of all property covered hereunder, the total value of such property at each location and all specific insurance in force at each of such locations on the last day of each month. At the time of any loss, if the assured has failed to file with this Company reports of values as above required, this policy, subject otherwise to all its terms and conditions, shall cover only at the locations and for not more than the amounts included in the last report of values, filed prior to the loss.

"Permission granted for such use of the premises as is usual and incidental in the business, as conducted therein of *Lumber Yard—200 feet clear space clause* (State kind of business) *attached to policy.* and to keep and use all articles and materials usual and incidental to said business, in such quantities as the exigencies of the business require."

* * * * * *

X. At the time policy No. 1083 was issued, attached to it was the following clear space clause:

"Saw and Planing Mill Risks. (Clear Space Clause.)

"Warranted by the assured that a continuous clear space of _200_ feet shall hereafter be maintained between the property hereby insured and any lumber pile or lumber shed (except loading and assorting sheds at the planer, when said sheds do not exceed the area of mill), and that said space shall not be used for the handling or piling of lumber thereon for any purpose; tramways, upon which lumber is not piled alone being excepted; but this shall not be construed to prohibit loading or unloading within, or the transportation of lumber or timber products across such clear space, it being specifically understood and agreed by the assured that any violation of this warranty shall render this policy null and void.

"Attached to and forming a part of Policy No. _1083_ of the _Raleigh Underwriters of World Fire & Marine Ins. Co._ of _Hartford, Conn._ issued at its _Butler, Alabama,_ Agency.

> "Dansby, Pittard and Evans
> By: (Signature) Agent.

"Note—Agents will sign and paste one on Policy, one on Daily Report, and one on Register."

XI. In connection with the lumber yard at Melvin, the Hood Lumber Company operated a planing mill and other kindred operations, one of which was a lumber sorting shed adjacent to the planer. All of these operations were located on the south side of the Gilbertown-Shubuta Road, at Melvin. In the normal operations of the Company, lumber was conveyed from the lumber yard proper to the sorting shed, where it was "bulked down" prior to being run through the planing mill.

XII. The fire of November 7, 1944, destroyed the planing mill, the sorting shed, and an undetermined quantity of lumber "bulked down" in the sorting shed at that time. This lumber had only recently been transferred from the lumber yard proper to the sorting shed, and was in the same condition as was the lumber in the lumber yard. It is for coverage on this lumber which was destroyed by fire in the sorting shed that defendant has made claim under policy No. 1083.

XIII. Between the lumber yard proper and the sorting shed, which was adjacent to the planing mill, the 200-foot clear-space provision of policy No. 1083 was scrupulously maintained.

XIV. "The location and limit" for the lumber in the sorting shed was not shown under "List of Locations and Limits", nor was it included in any succeeding monthly report of values, nor was it otherwise recorded until claim was filed after the fire.

## Discussion

It is the contention of the plaintiff:

(a) That the sorting shed was a part of the planing mill.

(b) That the lumber "bulked down" in the sorting shed had passed out of "Yard #1", and had been transferred across the 200-foot clearance required by the policy to be maintained around the lumber yard.

(c) That the fire insurance rate on lumber in the sorting shed would have been $8.65, or more than four times higher than the rate of $2 for lumber in the yard.

(d) That the "Saw and Planing Mill Risks. (Clear Space Clause.)", heretofore set out as a printed rider to policy No. 1083, was inadvertently attached to the policy, and that the printed rider which should have been attached was the "Lumber Clear Space Clause."[1]

1. Underwriter's form of Lumber Clear Space Clause.
"Lumber Clear Space Clause.
"Warranted by the assured that a continuous clear space of ——— feet shall be maintained between the property hereby insured and any woodworking or manufacturing establishment or dry kiln, or any burning slab pile or slab pit, and that said space shall not be used for the handling or piling of lumber thereon for any purpose; tramways, upon which lumber is not piled, alone being excepted; but this shall not be construed to prohibit loading or unloading within or the transportation of lumber or timber products, across such clear space; it being specifically understood and agreed by the

(e) That the attachment of the wrong rider in this instance did not create an extension of coverage and did not work a prejudice to assured in misleading assured as to coverage afforded.

(f) That both forms of rider constitute promises by the assured to the insurance company, and do not contain any promise by the insurance company to the assured; that neither rider affords any coverage whatever; that in maintaining the 200-foot clearance between the lumber yard and the other units at Melvin, the assured acted at all times as though it thought the correct "Lumber Clear Space Clause" had been attached to the policy.

In opposing the contentions of the plaintiff and asserting its claim to coverage, the defendant and counter-claimant maintains:

(a) That the sorting shed was, in fact, but an extension of the lumber yard itself; that the shed was actually a part of the yard and the yard was coextensive with it.

(b) That the lumber which burned in the sorting shed had been transferred directly from the stacked piles across the 200-foot clear space to the sorting shed, where it was sorted and kept dry before entering the planing mill.

(c) That the status of the lumber in the sorting shed was that of lumber "in transit".

(d) That the effect of attaching the "Saw and Planing Mill Risk. (Clear Space Clause.)" to policy No. 1083 was to nullify the "Exclusion Clause" of the policy (which reads in part as follows: "This policy does not cover * * * property in transit",) and to extend coverage to the lumber in the sorting shed by exempting that lumber from the operation of the clear-space clause and permitting its transportation across the clear space to the sorting shed (at or near the planing mill) which shed is specifically exempted by the "Saw and Planing Mill Risk. (Clear Space Clause.)" (See description of policy, supra.)

Defendant's witness, C. E. Hood, Jr., who owned and operated Hood Lumber Company at and prior to the time of the fire of November 7, 1944, testified by deposition that he had lost one planing mill, with a quantity of lumber, by a fire at the Melvin plant, about six months prior to November 7, 1944; that following that first fire his banker had insisted on complete coverage, and that was what he thought he had purchased; that it had been his intention to obtain "complete fire protection coverage on both the plant and the lumber that would be at the plant to be processed, in transit, from the yard to the plant, in the event of another loss", and he assumed he had that kind of coverage. He further testified, however, that when the planing mill burned on November 7, 1944, the loss thereon was only partially covered by insurance. Mr. Hood had no recollection of having examined policy No. 1083 until after the fire of November 7, 1944. He further testified that he had made no claim for the lumber destroyed at the planing mill in the first fire, as he did not think the policy he had on the lumber yard at that time covered the lumber in the planing mill; that no lumber yard had burned in either of the two fires; that the lumber lost in the second fire was "in transit and bulked down under the shed of the planing mill roof".

■ However, there is no ambiguity in the policy and the terms thereof cannot be varied by parol testimony. United Pac. Ins. Co. v. Northwestern Nat. Ins. Co., 10 Cir., 185 F.2d 443; Lumber Underwriters v. Rife, 237 U.S. 605, 35 S.Ct. 717, 59 L.Ed. 1140.

■ Moreover, no facts were brought out in the trial which would work an estoppel against the plaintiff insurance company. Hood and his successors in title were in nowise misled by oral representations, or otherwise, on the part of the insurance company, as to the coverage which was provided in policy No. 1083.

assured that any violation of this warranty shall render this policy null and void.

"Attached to and forming a part of Pol-icy No. ——— of the ————— of ——— issued at its ——— Agency.

"————— Agent."

The two questions of mixed law and fact which remain for the court's determination are:

(1) Was the sorting shed an extension of Lumber Yard No. 1, so as to afford coverage for the lumber in the sorting shed under policy No. 1083?

(2) If the sorting shed was not an extension of the lumber yard, but a unit separate and apart from the lumber, yard, did the attachment of the "Saw and Planing Mill Risks. (Clear Space Clause.)" effect coverage on the lumber in the sorting shed?

█ The finding of fact has already been made that the sorting shed was contiguous to and formed a part of the planing mill; that the lumber in the sorting shed, which was destroyed by fire on November 7, 1944, had passed out of the lumber yard proper and across the 200-foot clearance. The court is therefore of the opinion that the lumber in the sorting shed was not a part of the lumber in the lumber yard, but had acquired another location and status. Jefferson County Bank v. Insurance Co. of State of Pennsylvania, 1933, 251 Ky. 502, 65 S.W.2d 474; Queen Insurance Co. v. Watson, 1927, 31 Ariz. 340, 253 P. 440.

█ It is further the opinion of the court that the rider known as "Lumber Clear Space Clause" and the rider designated "Saw and Planing Mill Risks. (Clear Space Clause.)" are nothing more nor less than agreements on the part of the insured to keep around the lumber, where that is insured, or around the manufacturing plant, where that is insured, a clear space of a designated number of feet to reduce the fire hazard. The "Saw and Planing Mill Risks. (Clear Space Clause.)" attached to the lumber yard policy is meaningless except as evidencing an intent to require that some sort of clear space be maintained around the lumber insured. "Where not inconsistent with other parts of the contract, or incompatible with the surrounding facts and circumstances or the subject matter, every material word, term, or phrase, employed in the contract, as construed in, connection with the entire contract, should be given meaning and effect if reasonably possible or practicable. However, although ordinarily no term, phrase, or clause can be disregarded or rejected in construing the policy as an entirety, the court is justified in ignoring or rejecting part of the language of the contract where, in view of the subject matter, it is meaningless, inapplicable, inconsistent, or inoperative * * *." 44 C.J.S., Insurance § 298, p. 1199.

The intent of such clear-space clauses is not to extend coverage but to minimize fire hazards. The erroneously incorporated clear-space clause adds nothing to the value of the coverage purchased, but was only an obligation assumed by the insured to lessen the hazards of fire.

Hood obtained the coverage which he paid for, namely, coverage on the lumber in the yard. To have obtained coverage on the lumber in the sorting shed would have cost him greatly in excess of the premium paid. The fact that he did not read his policy until after the fire is certainly his own fault and not that of the plaintiff.

### Conclusions of Law

Accordingly the court concludes as follows:

1. This is a case of actual controversy within the court's jurisdiction, and a judgment for declaratory relief is appropriate.

2. There is no competent evidence submitted to show that the plaintiff insurance company is estopped to plead the terms of the policy, as written.

3. By the terms of the policy coverage is restricted to lumber in the lumber yard proper.

4. The erroneously attached "Saw and Planing Mill Risks. (Clear Space Clause.)" does not expand coverage to include lumber placed in the sorting shed, and there is no competent evidence to show that the assured so interpreted the rider at the time the policy was issued.

5. The counterclaim of the defendant must be denied, and it is therefore unnecessary to determine the value of the lumber in the sorting shed which was destroyed.

An appropriate order has been entered dismissing the defendant's counterclaim as amended and declaring the rights of the parties in accordance with the foregoing findings and conclusions.